# IN THE COURT OF APPEALS OF IOWA

No. 22-0444
Filed June 15, 2022

**IN THE INTEREST OF E.D.,**
**Minor Child**

**S.F., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.

A mother appeals a review order in a child-in-need-of-assistance proceeding. **REVERSED AND REMANDED.**

Mark A. Milder, Denver, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Mark E. Huegel of Walk, Prichard, Baresel & Murphy, PC, Charles City, attorney and guardian ad litem for minor child.

Considered by May, P.J., Chicchelly, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**DANILSON, Senior Judge.**

A mother appeals a review order in a child-in-need-of-assistance proceeding, challenging the removal of her child and the denial of her request to change venue. Upon our review, we reverse the decision of the juvenile court finding Floyd County was a proper venue for this case and conclude the best interests of the child require that we remand to the juvenile court to order transfer of the case to the county of the child's and parents' residence.

## I.     *Background Facts and Proceedings*

This family came to the attention of the Iowa Department of Human Services in early 2020, upon reports that then eleven-year-old E.D. had engaged self-harming behavior and had sexually assaulted his younger half-brother. The juvenile court adjudicated E.D. a child in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2) and (f) (2020) and ordered him to remain in the mother's home without the half-brother. In February 2021, after a long delay, the child completed a court-ordered psychosexual evaluation, which found him to "have high risk of violent and aggressive tendencies, planned and extensive criminality, psychopathic features, and lack of cognitive capability, as well as a high risk for dangerousness and a low amenability to treatment." The evaluation recommended outpatient sex offender treatment, but if progress was not made in four months due to "inconsistent attendance" or "lack of cooperation," then "inpatient treatment should be considered."

A review hearing took place in July. By that time, the child had attended only one outpatient sex offender treatment session, and the mother did not appear committed to following through with the child's treatment plan. The court ordered

the child removed from the mother's care for placement in shelter care. By September, the mother maintained she was capable of getting the child to his appointments, and the department recommended E.D. be returned to her care. Although the court noted it had "a number of significant concerns about whether this can be successful," it further found "the shelter is not working to provide [E.D.] with any services—which is not doing any good either." The court returned the child to the mother's care, "with the expectation that the parties be open and honest about any struggles that they are having so that we can address those quickly and hopefully avoid the need for future removal." The court also made clear that following through with treatment and services "will be essential to a successful return home."

Unfortunately, by the time of a February 2022 review hearing, the court found "[h]indsight demonstrates this was not the appropriate course of action." The child was having troubling issues at school and at home, including new reports of sexual abuse against his half-brother. The mother was "uncooperative" and denied reports of negative behavior by E.D. And the mother had not taken the child to any treatment sessions, which the court found had "wasted six months that this child could be getting treatment." The court ordered the child removed from the mother's care "for placement in shelter until he can be placed at a qualified residential treatment program (QTRP)."

Also at that hearing, the court addressed the department's request for a change of venue to Polk County, where the mother and the child lived.[1] The court observed "that change of venue is going to add some additional delay until we can get him down to Polk County and figure out what to do with him" and "[w]e've wasted since September with this kid not getting any sex offender treatment." Ultimately, the court denied the request to change venue, emphasizing E.D. needed to be "evaluated so we can determine if a QTRP is appropriate," and "if we have that kind of in place, then we can take a look at transferring venue at that point." The mother appeals the court's order.

## II.     Standard of Review

Our scope of review in juvenile court proceedings is de novo. *In re D.D.*, 955 N.W.2d 186, 192 (Iowa 2021). Our paramount concern is the best interests of the child. *Id.*

## III.     Change of Venue

The mother contends the juvenile court improperly denied the "request of all parties" to transfer the venue of the case to Polk County. Iowa Code section 232.62 provides:

> 1. Venue for child in need of assistance proceedings shall be in the judicial district where the child is found or in the judicial district of the child's residence.
> 2. The court may transfer any child in need of assistance proceedings brought under this chapter to the juvenile court of any county having venue at any stage in the proceedings as follows:
>> a. When it appears that the best interests of the child or the convenience of the proceedings shall be served by a

---

[1] The court was also made aware of an ongoing child abuse assessment in Polk County involving the child regarding the recent allegations of sexual abuse against the half-brother.

transfer, the court may transfer the case to the court of the county of the child's residence.

b. With the consent of the receiving court, the court may transfer the case to the court of the county where the child is found.

Here, the mother and child lived in Floyd County at the outset of the case in February 2020. By October, they had moved to Polk County, where they have remained.[2] The mother's attorney acknowledged that the mother had lived in Polk County "the whole time [he had] been involved in the case" and that she did not object if the case was transferred. He also noted that E.D. had another "active juvenile court services case" in Polk County "so it seems like all the action is down in Polk County" and "it's appropriate to change venue." The guardian ad litem reported that the mother thought "the case was being transferred to Polk County." The department opined, "It would be in [E.D.]'s best interest to have a Polk County [caseworker] assigned who is more readily available to make contact attempts with the family to gain engagement. . . . Continuing to provide services out of the Floyd County DHS office is impractical and not in [E.D.]'s best interest." Specifically, the child had resided in Polk County continuously since October 2020, except for two months between July and September 2021, when he was placed in shelter care in Fort Dodge.

We determine the child no longer resides in Floyd County. He neither lived nor went to school there. The mother and child only lived in Floyd County for the first months of this proceeding, two years ago. Accordingly, we reverse the decision of the juvenile court finding Floyd County was no longer a proper venue

---

[2] The child's father, who has not been involved in this proceeding, has resided in Polk County throughout.

for this case. We acknowledge the ability to perform hearings by videoconference and the benefits of "one family one judge," but the facts of this case and the child's best interests strongly support a transfer of venue. Accordingly we remand to the juvenile court with orders to transfer the case to the county of the child's residence. *See* Iowa Code § 232.62(3). "The judge of the receiving court may accept the filings of the transferring court or may direct the filing of a new petition and hear the case anew." *Id.* "Because we do not know if the receiving court in this case will accept the orders of the [Floyd] County court, or direct the filing of a new petition, we do not address any further issues in this appeal." *See In re B.J.*, No. 03-0226, 2004 WL 239873, at *2 (Iowa Ct. App. Feb. 11, 2004).

**REVERSED AND REMANDED.**